UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 0:13-cv-156-KKC

LINDA JORDAN                                                            PLAINTIFF

v.                                    **OPINION & ORDER**

CAROLYN W. COLVIN, Acting Commissioner
of Social Security                                                         DEFENDANT

       The plaintiff, Linda Jordan, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for period of disability and disability insurance benefits ("DIB"). The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence and was decided by the proper legal standards.

**I.     OVERVIEW OF THE PROCESS**

       In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1)     If the claimant is currently engaged in substantial gainful activity, she is not disabled.

(2)     If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled

(3)     If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed

1

> impairment, the claimant is presumed disabled without further inquiry.
>
> (4) If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.
>
> (5) Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc), she is not disabled.

*Id.*

The burden of proof is on the claimant throughout the first four steps of this process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. § 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Jordan filed her claim for DIB on January 10, 2011, alleging an onset date of June 1, 2006 [TR 215]. The agency denied her application initially and on reconsideration [TR 83-84]. Jordan requested review by an Administrative Law Judge ("ALJ"), and a hearing was held on April 13, 2012 [TR 31-75]. The ALJ subsequently issued an unfavorable decision on May 23, 2012 [TR 12-23].

At the time the ALJ rendered her decision, Jordan was 55 years old. [TR 23, 215]. She is a high school graduate and has past relevant work experience as a furniture sales person [TR 220]. She alleges disability due to severe rheumatoid arthritis; swelling in the ankles, hands, and feet; and

pain in the legs, feet, right finger and right hand [TR 219]. Although Jordan initially alleged that she became disabled on June 1, 2006, she later amended her alleged onset date to October 1, 2006 [TR 33]. Her insured status expired shortly thereafter, on December 31, 2006 [TR 215].

The ALJ began her analysis by determining that Jordan has not engaged in any substantial gainful activity from her alleged onset date of October 1, 2006 through her date last insured of December 31, 2006 [TR 14]. At step two, the ALJ found that Jordan suffers from the following severe impairments: left shoulder dysfunction; right second digit joint pain; asthma; and obesity [TR 14]. Continuing on to the third step, the ALJ determined that Jordan does not have an impairment or combination of impairments that meets or medically equals in severity any of the listed impairments [TR 16-17].

Next, the ALJ reviewed the record to determine Jordan's residual functional capacity, or RFC. An RFC is the assessment of a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. § 404.1545(a)(1), 416.945(a)(1). The ALJ determined that, based on the medically determinable evidence, Jordan has the RFC to perform the exertional and nonexertional requirements of medium work, with the following limitations: never climbing ladders, ropes, or scaffolds; occasionally balancing; avoiding concentrated exposure to irritants, performing frequent overhead reaching with the left arm; avoiding moderate exposure to hazards; and performing frequent fine manipulation with the right hand [TR 17].

Based on a hypothetical individual with Jordan's vocational factors and RFC, the vocational expert ("VE") testified that Jordan could return to her past relevant work as furniture sales person as it is generally performed in the national economy [TR 70]. Thus, at step four, the ALJ found that

Jordan is not disabled [TR 21-22]. Despite this conclusive finding, the ALJ continued on to step five of the sequential evaluation analysis to make an alternative finding. Based on Jordan's RFC, age, education and experience, the VE identified other jobs existing in significant numbers in the national economy that she could perform [TR 98-99]. Based on this testimony, the ALJ determined that Jordan was also not disabled at step five of the sequential evaluation process [TR 60-61].

The ALJ's decision that Jordan is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied her request for review on August 28, 2013 [TR 1-3]. Jordan has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## III. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must

review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**IV.  ANALYSIS**

On appeal, Jordan presents several issues for review. First, she argues that the ALJ erred by failing to afford appropriate weight to the opinion of two physicians, Dr. Bruce Guberman and Dr. Glenn Harper. The ALJ is required to "evaluate every medical opinion" in the record. *See* 20 C.F.R. §§ 404.1527(d). Yet, not all medical sources are treated equally. The SSA regulations classify acceptable medical sources into three types: nonexamining sources, nontreating (but examining) sources, and treating sources. *Id*. When evaluating medical opinions, the SSA will generally "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" her. *Id*. § 404.1527(d)(1). The most weight, however, is afforded "to opinions from [the claimant's] treating sources, since those sources are likely to be medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s). . . . ." *Id*. §§ 404.1527(d)(2). The ALJ is required to give "good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Id*.

The first physician, Dr. Guberman, never treated or even examined Jordan. Moreover, it is not clear from the record whether he reviewed any or all of Jordan's medical file. Dr. Guberman's opinions are contained in a one-page Residual Functional Capacity Evaluation form dated March 19, 2012, wherein he checked various boxes corresponding with his opinion on Jordan's RFC [TR 447]. According to this form, Dr. Guberman opined that Jordan could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 2 hours, sit for 4 hours in an 8-hour day; alternate between

5

sitting and standing every hour; and that she had limited upper and lower pushing and pulling. He also opined that Jordan could never climb ladders, ropes or scaffolds; never balance; and only occasionally climb ramps and stairs, stoop, kneel, crouch or crawl [TR 447]. Furthermore, he limited her reaching in all directions and opined that she should avoid moderate exposure to extreme cold and heat, wetness, humidity, and vibration, as well as all hazards, machinery, and heights [TR 447]. The form also includes diagnoses of severe rheumatoid arthritis, ankle, hands and feet swell, pain in legs, feet, finger, and right hand, asthma, chronic bronchitis, and left shoulder arthroscopy. His report concludes with the statement "I agree with the above physical limitations on becoming disabled on or about October 2006" [TR 447].

Even though Dr. Guberman's opinion is not entitled to the special deference afforded treating physicians and the ALJ was not required to give "good reasons" for the weight afforded to the opinion, the ALJ's decision reveals that he carefully analyzed Dr. Guberman's findings in conjunction with the entire medical record [TR 20]. As the ALJ concluded, however, that there is "nothing in the file to support these limitations back to October 2006" [TR 20]. The evaluation, completed in 2012, simply does not offer any supporting narrative or explanation of his check-box opinion related to Jordan's condition in 2006. Under the regulations, "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). For these reasons, the ALJ did not err by failing to accord any special weight to Dr. Guberman's opinion.

Next, Jordan contends that the ALJ erred by failing to accord appropriate weight to the opinion of her treating physician, Dr. Glenn Harper. Dr. Harper also completed a one-page Residual Functional Capacity Evaluation in April 2012, opining limitations largely identical to those of Dr.

6

Guberman, except that he did not opine on whether Jordan had any limitations with respect to climbing ladders, ropes or scaffolds and balancing [TR 453].

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 530-31; *see also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference"). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris*, 756 F.2d at 435. If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2); *see also Walters*, 127 F.3d at 530.

The Social Security regulations recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. . . ." 20 C.F.R. § 404.1527(d)(2). Thus, when weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors, such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. §

7

404.1527(d)(2)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

In the Sixth Circuit, however, a treating source opinion should be given controlling weight only when it is well-supported by clinical and laboratory findings, and is consistent with other evidence of record. *Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984); *Crouch v. Secretary of Health and Human Services*, 909 F.2d 852, 856 (6th Cir. 1990); *see also*, 20 C.F.R. §§ 404.1527(c). The Commissioner is not bound by a mere conclusory statement of a treating physician, particularly where it is unsupported by detailed, objective criteria and documentation. *See Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). In other words, the supportability of a treating physician's opinion depends on the degree to which the source presents relevant evidence to support the opinion, and in particular, support the opinion with medical signs and laboratory findings. 20 C.F.R. §§ 404.1527(c). "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, *2 (1996).

While Jordan argues that Dr. Harper was a treating physician whose opinion is entitled to controlling weight, the ALJ disagreed and gave "good reasons" for so doing. First, the ALJ noted that Dr. Harper primarily treated Jordan for sick calls and minor health problems[ TR 19, 331-334]. Second, the ALJ found that Dr. Harper's opinions were inconsistent with Jordan's own report of her

8

symptoms and activities. For example, she reported that she tried to walk at least three days per week [TR 33] and performed Pilates for 30 minutes per day [TR 332]. In the 2011 pain questionnaire, Jordan reported preparing simple meals, vacuuming, dusting, caring for her mother, doing laundry, driving and shopping for groceries once every two weeks [TR 240, 247, 249]. Finally, the ALJ found that Dr. Harper's opinion was not supported by any other medical evidence of record. Accordingly, the ALJ did not err in failing to afford controlling weight to Dr. Harper's opinion.

Next, Jordan argues that the ALJ afforded undue weight to the opinion of the State agency medical consultant Alex Guerrero, M.D. While state agency medical and psychological consultants are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation," 20 C.F.R. 404.1527(e), the ALJ did not give controlling weight to Dr. Guerrero's opinion [TR 20]. The ALJ simply noted that Dr. Guerrero "denied the claimant due to insufficient evidence" [TR 20]. The ALJ also disregarded Dr. Guerrero's finding of no medically determinable impairments and elected to afford Jordan "every benefit of the doubt for anything that could have been diagnosed before her date last insured when establishing" her RFC [TR 20]. Thus, the ALJ did not afford improper weight to the opinion of Dr. Guerrero.

Finally, Jordan contends that the ALJ erred by failing to consider the combined effect of all her impairments in accordance with 20 C.F.R. § 416.923. Specifically, she argues that her severe left shoulder dysfunction, finger dysfunction, asthma and obesity, in combination with severe rheumatoid arthritis, arthralgia, anxiety, vertigo, and COPD warrant a finding of disability. A review of the ALJ's decision, however, reveals that she properly considered her condition as a whole in rendering her findings. As the Sixth Circuit has held, "[a]n ALJ's individual discussion of multiple

impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Secretary of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990). Moreover, the mere fact that a claimant has been diagnosed with a variety of conditions does not equate automatically with any functional limitation. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). "The mere diagnosis [of a disease] says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Jordan has failed to explain in what way the ALJ did not consider the combined effect of her impairments, and she has failed to show that her impairments caused additional limitations on her ability to work. *See Metcalfe v. Astrue*, 2011 WL 2009446, at *5 (E.D.Ky. May 23, 2011). Thus, the ALJ did not err by failing to considering the combined effect of her impairments.

V. **CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) Plaintiff's motion for summary judgment [DE #19] is **DENIED**;

(2) the Commissioner's motion for summary judgment [DE #20] is **GRANTED;**

(3) the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(4) a judgment consistent with this Opinion & Order will be entered contemporaneously.

Dated November 6, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY